```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
ORVILLE HALL and PHILLIP PRICE,
collectively professionally known as "THE
SHOWBOYS",

                              Plaintiffs,

-against-

PROTOONS INC.,

                              Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/22/2024
```

21 Civ. 2043 (AT)

**ORDER**

ANALISA TORRES, District Judge:

      Plaintiffs, Orville Hall and Phillip Price ("The Showboys"), bring this breach-of-contract action against Defendant, Protoons Inc. ("Protoons"), for royalties owed pursuant to a recording and publishing contract. *See* Compl., ECF No. 1. Protoons asserts four counterclaims against The Showboys, alleging, *inter alia*, that they breached the contract first by infringing a third party's copyright with their 1986 song "Drag Rap." *See* Countercl. ¶¶ 46–65, ECF No. 38.

      Before the Court are The Showboys' motion for summary judgment and Protoons' cross-motion for summary judgment. ECF Nos. 86, 99. For the reasons stated below, The Showboys' motion is GRANTED and Protoons' cross-motion is DENIED. The Court GRANTS summary judgment to The Showboys on Protoons' first, second, and third counterclaims, and Protoons' fourth—and final—counterclaim for a declaratory judgment is DISMISSED.

# BACKGROUND[1]

I. <u>Factual Background</u>

Plaintiffs, Hall and Price, are R&B and hip-hop performers professionally known as "The Showboys." Pls. 56.1 ¶ 1, ECF No. 98. On May 20, 1985, The Showboys, on the one hand, and Profile Records, Inc. ("Profile Records")[2] and Protoons, on the other, entered into an exclusive recording and publishing agreement (the "Agreement"). *Id* ¶ 2; *see* Agreement, ECF No. 89-1. Under the Agreement, The Showboys agreed to produce musical compositions (the "Compositions") and record and deliver master recordings (the "Masters") embodying their performances of the Compositions in exchange for royalties. Pls. 56.1 ¶¶ 5–6.

The Showboys assigned to Protoons all of their rights, title, and interest in the Compositions, including their right to "collect and receive any and all monies derived from the exploitation of the [] Compositions throughout the world, excluding the writer's share of public performance royalties." *Id.* ¶¶ 6–7; Agreement ¶ 11(a)-(b). In return, Protoons agreed to pay The Showboys royalties in accordance with Exhibit A to the Agreement. Pls. 56.1 ¶ 8; Agreement ¶ 11(c)(1). Exhibit A entitled The Showboys to "[f]ifty percent (50%) of the sums actually received" by Protoons from its exploitation of its licenses in the Compositions and from "any other sources . . . not specifically provided for herein." Agreement Ex. A ¶¶ (d)–(g); *see also id.* ¶ 20(c) (defining "net income" as gross income less "direct expenses actually incurred").

---

[1] The facts in this section are taken from the parties' Rule 56.1 statements, responses, and declarations, unless otherwise noted. Disputed facts are so noted. Citations to a paragraph in a Rule 56.1 statement also include the opposing party's response. "[W]here there are no citations[,] or where the cited materials do not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (alteration omitted). On a motion for summary judgment, the facts must be read in the light most favorable to the non-moving party. *Id.* at 69.

[2] The now-defunct Profile Records was a corporate affiliate of Protoons. Pls. 56.1 ¶¶ 3–4.

2

The Agreement also required Protoons to provide semi-annual accounting statements of the royalties due. Pls. 56.1 ¶¶ 10–11; Agreement ¶¶ 7, 11(h).[3]

The Showboys ultimately wrote and recorded four Compositions pursuant to the Agreement: "Cold Frontin'," "Drag Rap," "That's What I Want For Christmas," and "The Ten Laws of Rap."[4] Pls. 56.1 ¶ 16. Profile Records commercially released the Masters of The Showboys' performances between 1985 and 1987. *Id.* ¶¶ 17–20. Although the Agreement was terminated by letter dated May 18, 1988 (the "Termination"), the Termination did not alter Protoons' rights to the Compositions or its obligation to pay The Showboys royalties. *Id.* ¶¶ 13–15; *see* Termination, ECF No. 89-3.

As the rightsholder to the Compositions, Protoons has licensed the Compositions' use by third parties and asserted copyright infringement claims against unauthorized users. Pls. 56.1 ¶ 27. "Drag Rap" in particular has been frequently sampled by other musical artists, including the rappers Drake and T.I. Def. 56.1 ¶ 27, ECF No. 107; *see* Pls. 56.1 ¶ 32. According to an accounting produced by Protoons' administrator UMPG, Protoons received ▮▮▮▮▮▮ in royalties from the Compositions from March 9, 2015, through December 31, 2021. ECF No. 92 ¶¶ 12–13; ECF No. 92-9.

Protoons has not paid any royalties to The Showboys from March 9, 2015, to the present. Pls. 56.1 ¶ 41. Protoons has also not provided The Showboys accounting statements for twelve semi-annual periods during that time. *Id.* ¶ 38. Protoons contends, however, that it is not

---

[3] Protoons disputes that it is obligated to pay royalties or make accountings if The Showboys are in breach of the Agreement. *E.g.*, Pls. 56.1 ¶¶ 9, 11.

[4] The parties amended the Agreement on September 29, 1987, to provide for the recording and delivery of a Christmas musical composition. Pls. 56.1 ¶ 12.

obligated to pay royalties to The Showboys because they breached paragraph 13 of the Agreement, which states that The Showboys

> warrant[] and represent[] the following:
> …
> (b) There are no restrictions with respect to Compositions [The Showboys are] legally able to perform for [Profile Records] hereunder except as herein set forth.
> …
> (e) That neither the Masters nor the performances embodied thereon, nor any use thereof by [Profile Records] of its grantees, licenses or assigns will violate or infringe upon the rights of any third party.

Agreement ¶ 13(b), (e).[5] Protoons argues that two paragraphs of the Agreement authorize it to suspend the payment of royalties in the event of breach. In paragraph 13(h), The Showboys agreed to

> indemnify, save and hold [Profile Records] harmless of and from any and all loss and damage (including reasonable attorneys' fees) arising out of or connected with any claim by any one or more third parties which is inconsistent with any of the warranties or representations made by [The Showboys] herein . . . . Pending the determination of any claim involving such alleged breach or failure, [Profile Records] may withhold sums due [The Showboys] hereunder in an amount consistent with such claim.

*Id.* ¶ 13(h). And, paragraph 14(b) provided that "[i]n the event of any default or breach by [The Showboys] in the performance of any of [their] obligations hereunder, [Profile Records] . . . may terminate the Term, or suspend its obligations hereunder for the duration of such default or breach and until the same has been cured[.]" *Id.* ¶ 14(b).

Protoons contends that The Showboys copied a distinctive nine-note sequence from the theme song of the television show "Dragnet" (the "Dragnet Theme") in composing "Drag Rap." Def. 56.1 ¶¶ 10–16. Hall, in his deposition, stated that he had "heard the theme song of the show

---

[5] The Termination, similarly, includes a warranty by The Showboys that the Compositions "will not violate or infringe upon any common law or statutory rights of any person, firm or corporation," and that "[t]he rights granted [] are free and clear of any claims, demands, liens or encumbrances." Def. 56.1 ¶ 6.

[Dragnet]" and knew that the sequence "came from the TV show."  Hall Dep. at 24:25–25:4, 25:24–25, ECF No. 97-7.  He explained that he and Price had "decided to write a gangster rap record" and that "in [his] head, what was synonymous with gangster was that melody, 'bum ba bum bum.'"  *Id.* 22:22–25; *see* Def. 56.1 ¶ 10.

Protoons states that it has "a good faith belief, based on its business judgment, that [The Showboys'] failure to secure the right to copy the nine-note sequence . . . creates significant risk" for Protoons, exposing it to claims from the rightsholders of the Dragnet Theme.  Def. 56.1 ¶ 21.  Protoons admits, however, that "there have never been any copyright infringement claims asserted by any third party" with respect to "Drag Rap."  Pls. 56.1 ¶ 42.  And, Protoons concedes that it and its administrators have commercially exploited the Compositions "without interruption" since 1985.  *Id.* ¶¶ 43–44.

Beginning in September 2015, counsel for The Showboys began taking steps to collect unpaid royalties.  Def. 56.1 ¶¶ 30–35.  On October 24, 2018, counsel sent Protoons a "Notice of Termination" of Protoons' copyrights in the Compositions.  *Id.* ¶ 35.  The document provided that Protoons' copyright in "Drag Rap" would be terminated effective January 1, 2022.  ECF No. 89-5.  On January 23, 2020, in response to a letter from The Showboys' purported counsel,[6] counsel for Protoons asserted for the first time that The Showboys had breached the Agreement by "sampl[ing] and interpolat[ing] [] prior works owned and controlled by third parties."  ECF No. 97-28 (Protoons' response); *see* Def. 56.1 ¶ 40; ECF No. 97-27 (letter from The Showboys' purported counsel).

---

[6] The Showboys dispute that they knew about or authorized the letter.  Def. 56.1 ¶ 39.

II.   Procedural Background

The Showboys filed this action on March 9, 2021, asserting one claim for breach of contract arising from Protoons' alleged failure to pay royalties due under the Agreement. Compl. ¶¶ 99–102.  Protoons filed an answer and counterclaims on December 23, 2021, alleging that The Showboys breached the Agreement, the Termination, and the duty of good faith and fair dealing.  Countercl. ¶¶ 46–59.  Protoons also seeks a judgment declaring, *inter alia*, that "Drag Rap" "represents one or more instances of copyright infringement" by The Showboys.  *Id.* ¶¶ 60–65; Def. Mem. at 23–25, ECF No. 97.

On November 18, 2022, The Showboys moved for summary judgment on their breach-of-contract claim.  ECF No. 86.  On January 4, 2023, Protoons cross-moved for summary judgment on The Showboys' claim and its counterclaims.  ECF No. 99.

## DISCUSSION

I.   Legal Standard

Summary judgment is appropriate where the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  The moving party initially bears the burden of demonstrating the absence of a genuine dispute of material fact by citing evidence in the record.  *See Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of

material fact. Fed. R. Civ. P. 56(c)(1); *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

"Where, as here, there are cross-motions for summary judgment, 'each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.'" *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (quoting *Morales v. Quintel Entm't Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)). Once the movant meets its burden, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248. To survive summary judgment, the non-movant must present concrete evidence and rely on more than conclusory or speculative claims. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).

## II. Breach-of-Contract Claim and Counterclaim

"Under New York law, there are four elements to a breach of contract claim: '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'"[7] *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing Inc.*, 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). The Showboys argue that summary judgment should be granted on their breach-of-contract claim because: (1) the Agreement is valid and enforceable; (2) The Showboys delivered the Compositions to Protoons in satisfaction of their obligations under the Agreement; (3) Protoons has "failed to make any royalty payments whatsoever" since March 9, 2015; and (4) The Showboys have suffered damages in the amount of their withheld royalties. Pls. Mem. at 12–13, ECF No. 88.

---

[7] The Agreement provides that New York law governs. Agreement ¶ 28.

7

Protoons does not dispute that the Agreement is enforceable, nor that it has "suspended reporting and payments" to The Showboys. Def. Mem. at 14–15. Instead, Protoons contends that it was entitled to suspend performance because The Showboys breached the Agreement, having "falsely represented and warranted to [Protoons] that they had all necessary rights to Drag Rap." *Id.* at 15, 18–19. The Court disagrees.

It is true that under New York common law, "a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007). And, the Circuit has held that "there is no reason under New York law to treat a breach of warranty any differently than any other contractual breach." *Id.*

However, Protoons has failed to proffer any non-speculative evidence that "Drag Rap" "violate[s] or infringe[s] upon the rights of any third party" such that The Showboys are in breach of the warranties in paragraph 13 of the Agreement. Agreement ¶ 13(e). Although Protoons repeatedly asserts that The Showboys "conceded under oath that they took the nine-note musical theme" from the Dragnet Theme and "did not clear the rights to do so," Def. Mem. at 19, that is not sufficient to establish that "Drag Rap" infringes on a third party's copyright (and thereby violates the Agreement's warranties). Copyright infringement requires both "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Protoons has not produced evidence of a valid copyright in the Dragnet Theme. *See* Def. Mem. at 23 (asserting that the "nine-note sequence from the Dragnet Theme [] self-evidently qualifies as worthy of copyright protection"); *Vargas v. Pfizer, Inc.*, 418 F. Supp. 2d 369, 373 (S.D.N.Y. 2005)

8

(requiring copyright plaintiff to attach a certificate of copyright registration for the underlying sound recording). And, Protoons concedes that (1) no third party has ever asserted a copyright infringement claim with respect to "Drag Rap," and (2) it has profited from the song "without interruption" since its publication. Pls. 56.1 ¶¶ 42–44. At bottom, Protoons has not adduced any evidence—beyond its own "good faith belief," Def. 56.1 ¶ 21—that "Drag Rap" violates or infringes on the rights of any third party. As The Showboys argue, accepting Protoons' argument could "set a dangerous precedent whereby any music publisher could avoid its contractual duties to its writers simply by unilaterally claiming—rather than demonstrating—a theoretical breach." Pls. Reply at 20, ECF No. 109.

Even if Protoons did establish a breach, it has not established that the breach was material; that is, that it went "to the root of the agreement between the parties." *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997) (citation omitted). Under New York law, "[a] party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract." *Id.*; *see also Merrill Lynch*, 500 F.3d at 186 (noting that New York courts assess materiality "on basis of several factors, such as the absolute and relative magnitude of default, its effect on the contract's purpose, willfulness, and degree to which injured party has benefited under contract"); *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 414 (S.D.N.Y. 2004) (listing additional factors enumerated in the Restatement (Second) of Contracts § 241 to be considered in determining materiality).

Here, as The Showboys argue, "[t]he 'essence' of the parties' Agreement [is] the grant of rights to [Protoons] to administer and commercially exploit" the Compositions "in exchange for royalties." Pls. Opp. at 18, ECF No. 104. Protoons does not allege that The Showboys'

purported breach has impaired its ability to license the Compositions and collect royalties; to the contrary, Protoons has continued to license and profit from the Compositions "without interruption." Pls. 56.1 ¶¶ 43–45. Again, Protoons admits that "there have never been any copyright infringement claims asserted by any third party with respect to the Compositions." *Id.* ¶ 43. And if there were such a claim, the Agreement expressly provides that Protoons may withhold royalties "in an amount consistent with such claim" pending its determination. Agreement ¶ 13(h). This limited self-help provision—which would compensate Protoons for any royalties jeopardized by a third-party copyright claim—undermines Protoons' argument that it was justified in suspending performance upon mere suspicion it could be liable. *See Wechsler*, 330 F. Supp. 2d at 414 (noting that courts may consider "the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived" in determining whether a breach is material (quoting Restatement (Second) of Contracts § 241)).

The Court finds, therefore, that there is no genuine issue of material fact as to The Showboys' breach of contract claim because (1) the Agreement exists, (2) The Showboys adequately performed, (3) Protoons breached the Agreement, and (4) The Showboys suffered damages. The Showboys' motion for summary judgment on its breach-of-contract claim is, therefore, GRANTED. Finding no merit in Protoons' breach-of-contract counterclaims, the Court further grants The Showboys summary judgment on Protoons' counterclaims.[8]

Protoons also seeks a declaratory judgment stating, *inter alia*, that The Showboys infringed the Dragnet Theme, breaching the Agreement and Termination, and that Protoons did

---

[8] "Although [The Showboys] did not make a formal cross-motion seeking summary judgment on [Protoons'] counterclaims, a summary judgment motion 'searches the record' and thus the court may grant summary judgment to the non-movant where justified by the evidence in the record, even in the absence of a cross-motion." *Schulman v. Herbert E. Nass & Assocs. SEP IRA Plan*, No. 10 Civ. 9613, 2013 WL 4860119, at *8 (S.D.N.Y. Sept. 11, 2013) (citation omitted); *accord* 10A Wright & Miller, *Federal Practice & Procedure: Civil 3d* § 2720.

not breach the Agreement and Termination by ceasing royalty payments.  Def. Mem. at 23–25.  In view of the foregoing, Protoons' request for a declaratory judgment is DENIED and the declaratory judgment counterclaim is DISMISSED.

      III.      <u>Breach of Duty of Good Faith and Fair Dealing Counterclaim</u>

Protoons also moves for summary judgment on its counterclaim alleging that The Showboys breached the implied covenant of good faith and fair dealing in the Agreement and the Termination.  Protoons contends that The Showboys "repeatedly chose to make threats and take aggressive action against [Protoons], rather than opting for collaborative or cooperative approaches," including failing to "demand an audit" of Protoons to investigate their "suspicions about third-party licenses," "hir[ing] lawyer after lawyer," and, ultimately, initiating this lawsuit.  Def. Mem. at 21–22.

"In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002).  This covenant is breached "when a party acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." *O'Neill v. Warburg, Pincus & Co.*, 833 N.Y.S.2d 461, 463 (App. Div. 2007) (quotation marks and citation omitted).

But, "a party does not violate the covenant of good faith and fair dealing solely by acting in its own self-interest consistent with its rights under the contract." *S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497, 513 (S.D.N.Y. 2021) (cleaned up).  Protoons takes issue with the means by which The Showboys enforced their rights under the Agreement— which this Court has already found that Protoons breached, and The Showboys did not.  The implied covenant does not require a party to "opt[] for collaborative or cooperative approaches,"

11

or to refrain from taking legal action following a breach. Def. Mem. at 21; *see Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 408 (2d Cir. 2006) ("[T]he implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract" (citation omitted)).

None of Protoons' allegations of The Showboys' bad faith amount to conduct "destroying or injuring" its rights "to receive the fruits of the contract." *Thyroff*, 460 F.3d at 407 (citation omitted). Accordingly, summary judgment is GRANTED to The Showboys on this claim.

IV.    Rule 19

Finally, Protoons moves for summary judgment "on the additional ground that the Complaint should be dismissed for failure to join one or more indispensable parties"—namely, the rightsholder in the Dragnet Theme, whom Protoons identifies as David W. Schumann d/b/a Dragnet Music Company ("Schumann"). Def. Mem. at 26 (incorporating by reference ECF Nos. 25 and 28). Under Federal Rule of Civil Procedure 19, a court "must determine whether an absent party belongs in the suit, *i.e.*, whether the party qualifies as a 'necessary' party under Rule 19(a)." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000). Rule 19(a)(1) provides that the absent party should be joined, if feasible, where:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) the person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). "If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)." *Viacom*, 212

F.3d at 724.

Schumann is not a necessary party within the meaning of Rule 19(a). First, under Rule 19(a)(1)(A), Schumann's absence "will not prevent the district court from granting complete relief" between the existing parties. *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006). That is, Schumann's presence is not necessary to decide whether The Showboys or Protoons breached the Agreement, to which Schumann is not a party. Although Protoons argues that the Court's decision will expose either party to follow-on litigation, "Rule 19(a)(1)[(A)] is concerned only with those who are already parties." *Id.* (finding that a third party was not necessary when there was "no question that further litigation . . . is inevitable"). Second, under Rule 19(a)(1)(B), Schumann's absence from this action will not impair or impede any interest he has in the Dragnet Theme. He remains free to vindicate any rights he has in the Dragnet Theme. Nor will it subject him or the parties to a substantial risk of inconsistent obligations.[9] The Court makes no determination as to whether, as a matter of law, "Drag Rap" infringes on the Dragnet Theme. Rather, it holds only that Protoons has failed to adduce sufficient evidence for a reasonable jury to conclude that The Showboys have breached the Agreement or Termination. Schumann remains free to vindicate any rights he has in the Dragnet Theme in a copyright infringement action.

Having found that Schumann satisfies none of the three criteria for compulsory joinder, the Court will not enter summary judgment for Protoons on this basis.

---

[9] The Court notes that Schumann has not sought to intervene in this action. *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) (holding that "[i]t is the absent party that must 'claim an interest'"); *see, e.g.*, *Tross v. Ritz Carlton Hotel Co., LLC*, 928 F. Supp. 2d 498, 508 (D. Conn. 2013) (declining to find an absent party necessary where it had not moved to intervene).

## CONCLUSION

For the foregoing reasons, The Showboys' motion for summary judgment on its breach-of-contract claim is GRANTED. Protoons' cross-motion is DENIED. The Court further GRANTS summary judgment to The Showboys on Protoons' first, second, and third counterclaims, and DISMISSES Protoons' fourth counterclaim. By **September 3, 2024**, The Showboys shall file a proposed judgment consistent with this order.

The Clerk of Court is directed to terminate the motions at ECF Nos. 86 and 99.

SO ORDERED.

Dated: August 22, 2024
       New York, New York

_____
ANALISA TORRES
United States District Judge