UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___3/2/2026___

ORVILLE HALL and PHILLIP PRICE,
collectively professionally known as
"THE SHOWBOYS",

          Plaintiffs,

    -against-

PROTOONS INC.,

         Defendant.

21-CV-2043 (AT) (KHP)

**REPORT AND RECOMMENDATION ON
MOTION FOR LEAVE TO FILE AMEDNED
COUNTERCLAIMS**

**TO: THE HONORABLE ANALISA TORRES, UNITED STATES DISTRICT JUDGE**
**FROM: THE HONORABLE KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs, Orville Hall ("Hall") and Phillip Price ("Price") (collectively "Plaintiffs" or the "Showboys") originally brought this breach of contract action in 2019 against Defendant, Protoons Inc. ("Protoons") for royalties owed in connection with a recording and publishing contract. Before the undersigned for a Report and Recommendation is Defendant's motion for leave to amend its counterclaims. For the reasons set forth below, I respectfully recommend that the motion be DENIED.

## BACKGROUND

The Court presumes familiarity with the case and recounts only those facts necessary to provide context for the present dispute. Plaintiffs entered into an exclusive recording and publishing agreement in 1985 with Profile Records and Defendant, pursuant to which they assigned to Defendant all rights in certain musical compositions in exchange for royalties and semi-annual accountings. Under the agreement, Plaintiffs were entitled to fifty percent of sums received from the use of the compositions, which included four works recorded and released

1

between 1985 and 1987, most notably a musical piece entitled "Drag Rap."  Although the

agreement was terminated in 1988, Defendant retained its rights in the compositions and its

obligation to pay royalties.  Defendant has continued to license and commercially exploit the

works – including heavily sampled uses of "Drag Rap" – but has neither paid royalties nor

provided accounting of such use to Plaintiffs since March 2015.  Defendant contended it was

entitled to withhold payment based on alleged breaches of contractual warranties, asserting

that "Drag Rap" incorporates a nine-note sequence from the television show "Dragnet" without

authorization, thereby exposing Defendant to potential third-party claims, though no such

claims have ever been asserted for over 40 years and the compositions have been exploited

without interruption for decades.  Plaintiffs asserted a single breach of contract action against

Defendant because of the foregoing, and Defendant answered with four counterclaims.

Importantly, on June 7, 2021, the Court entered a scheduling Order pursuant to Federal Rule of

Civil Procedure ("Rule") 16 which provides that "[a]ny motion to amend…shall be filed within 30

days from the date of this Order."  (ECF No. 20)

Following an Order granting summary judgment in favor of Plaintiffs on all claims and

counterclaims (ECF No. 117), all then-extant issues had been adjudicated, and the matter

appeared ripe for entry of final judgment.  On September 19, 2024, however, Defendant filed a

motion for reconsideration of the Court's Order with respect to dismissal of its counterclaims.

(ECF No. 122)  The parties thereafter submitted complete briefing on the motion.  On April 9

and May 12, 2025, Defendant filed letters with the Court representing that settlement efforts

were underway, but not complete, and requesting extensions of time on both occasions as a

result.  (ECF Nos. 144, 146)  On September 10, 2025, Defendant submitted a letter requesting

that the Court defer ruling on the motion for reconsideration and instead grant leave to assert additional counterclaims that it contends arose during the course of this litigation.  (ECF No. 149)  The Court denied Defendant's request to refrain from issuing a decision on Defendant's motion for reconsideration, but granted its request to file a motion for leave to amend its counterclaims.  (ECF No. 152)  The Court ultimately denied Defendant's motion for reconsideration on February 26, 2026.  (ECF No. 169)   The only remaining issue in this case is whether Defendant can add what it styles as new counterclaims against Plaintiff for breach of contract based on a purported settlement agreement reached by the parties in February 2025, conversion, tortious interference with prospective economic advantage, and imposition of a constructive trust.  Other "new" facts supporting the proposed new counterclaims are that a prospective purchaser, Seeker Music, declined to enter into an agreement to acquire Plaintiffs' catalog due to Plaintiffs' failure and refusal to clear "Drag Rap," and that another prospective purchaser, Universal Music Group ("UMG"), offered a purchase price for the Showboys catalog that was substantially below its true value, likewise as a result of the unresolved status of "Drag Rap." Notably, Plaintiff's motion for reconsideration also was based on Seeker Music's decision not to acquire Plaintiff's catalogue, and the Court found that these facts did not warrant a change to the Court's decision on summary judgment that Defendant's original counterclaims premised on the failure to clear "Drag Rap" and/or that "Drag Rap" violated a third-party's rights in the nine note sequence were without merit and should be dismissed.

## LEGAL STANDARD

Under Rule 15(a), "a party may amend its pleading once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required,

3

21 days after service of a responsive pleading or 21 days after service of a motion under Rule

12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may

amend its pleading only with the opposing party's written consent or the court's leave. The

court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second

Circuit has stated that "[t]his permissive standard is consistent with our strong preference for

resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011)

(internal quotation marks and citation omitted). A court should freely grant leave to amend,

but may deny such leave for "good reason," which normally involves an analysis of four factors

articulated in *Foman v. Davis*, 371 U.S. 178, 182 (1962): (1) undue delay, (2) bad faith, (3) futility

of amendment, or (4) undue prejudice to the opposing party. *See McCarthy v. Dun &*

*Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman*, 371 U.S. at 178); *Monahan v.*

*New York City Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000). The "non-movant bears the

burden of showing prejudice, bad faith[,] and futility of [ ] amendment." *United States ex rel.*

*Raffington v. Bon Secours Health Sys., Inc.*, 567 F. Supp. 3d 429, 438 (S.D.N.Y. 2021) (citing *Grant*

*v. Citibank (S.D.), N.A.*, No. 10 Civ. 2955 (KNF), 2010 WL 5187754, at *6 (S.D.N.Y. Dec. 6, 2010)).

Where, as here, there is a scheduling order in place that establishes a deadline for

seeking leave to amend, "the lenient standard under Rule 15(a), which provides leave to amend

shall be freely given, must be balanced against the requirement under Rule 16(b) that the

Court's scheduling order shall not be modified except upon a showing of good cause." *Holmes*

*v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (internal quotation marks and citation omitted);

*see also* Fed. R. Civ. P. 16(b)(4) (a scheduling order "may be modified only for good cause and

with the judge's consent"); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir.

4

2003) (quoting Fed. R. Civ. P. 15 and 16). "Numerous circuits – and district courts within this Circuit – have similarly held that once the court has set an amendment deadline, a late motion must satisfy both Rule 16(b)'s good-cause requirement and Rule 15(a)'s amendment standard." *Aguilar v. Baton Corp. Ltd.,* No. 25 Civ. 880 (CM), 2025 WL 3523133, at *3 (S.D.N.Y. Dec. 9, 2025). The determination of whether "good cause" exists under Rule 16(b) largely turns on the diligence of the moving party. *Holmes*, 568 F.3d at 335 (citation omitted); *see also Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (to show good cause, moving party must demonstrate that "despite its having exercised diligence, the applicable deadline could not have been reasonably met" (internal quotation marks and citation omitted)); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[A] finding of 'good cause' depends on the diligence of the moving party.") (citations omitted).

**DISCUSSION**

Plaintiffs object to the proposed amended counterclaims arguing that all four are futile and without merit and that that Defendant's sixth, seventh, and eighth proposed counterclaims are sought too late in the litigation and should not be granted due to undue delay and prejudice as well as bad faith.

### A. Undue Delay as to the Sixth, Seventh, and Eighth Proposed Counterclaims

Under Rule 15, when a motion to amend is filed after an inordinate lapse of time, no adequate explanation is provided for that delay, and the proposed amendment would prejudice the non-moving party, the delay weighs against granting leave. *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). "[W]here a significant period of time elapses prior to the filing of a motion to amend, the moving party must explain the reason for the extended

delay." *Dass v. City Univ. of New York,* No. 18 Civ. 11325 (VSB), 2024 WL 4986914, at * 5 (S.D.N.Y. Dec. 5, 2024) (citing *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011). However, delay alone, "absent a showing of bad faith or undue prejudice," is insufficient to justify denial. *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

Defendant contends that its sixth, seventh, and eighth proposed counterclaims accrued in February 2025. However, it offers no justification for the approximately eight-month interval between the supposed accrual of these proposed counterclaims and the filing of the present motion. Further, this manifest delay, coupled with Defendant's failure to apprise the Court of the new facts that allegedly came to light in February or its plan to propose that new claims be added, falls far short of the diligence necessary to show good cause for the purposes of Rule 16. *See Gullo v. City of New York*, 540 F. App'x 45, 47 (2d Cir. 2013) ("The district court acted well within its discretion in concluding that [movant]'s three-month failure to move for amendment after learning [new facts] failed to demonstrate the diligence necessary to satisfy Rule 16."); *EMA Fin., LLC v. NFusz, Inc.*, 509 F. Supp. 3d 18, 36 (S.D.N.Y. 2020) (characterizing a three-month delay as "inexcusable"); *Tardif v. City of New York*, No. 13 Civ. 4056 (KMW) (FM), 2016 WL 2343861, at *5 (S.D.N.Y. May 3, 2016) (five-month delay deemed "lengthy"). Permitting amendment now – nearly five years after the original counterclaims were asserted and after the Court's deadline for amendment per its scheduling Order at ECF No. 20 (and after all original claims and counterclaims have been adjudicated) – would undermine principles of efficiency and finality. *See Parker,* 204 F.3d at 340 (reasoning that applying only Rule 15(a) to a case in a similar posture "would render scheduling orders meaningless and effectively would

6

read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.") (quoting *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1419 (11th Cir. 1998)); *Cartier v. Micha, Inc.,* No. 01 Civ. 11295 (CBM), 2004 WL 169746, at *2 (S.D.N.Y. Jan. 27, 2004) (finding "inordinate delay" where amendment was sought two years after the original pleading).  Defendant has failed to demonstrate that it acted diligently, much less that "despite its having exercised diligence, the applicable deadline could not have been reasonably met."  *Perfect Pearl Co., Inc.,* 889 F. Supp. 2d at 457.  Given the substantial passage of time since Defendant filed its original counterclaims and Defendant's failure to explain the delay weighs against granting leave to amend.  *Id.* at *3

Moreover, the supposed discovery of new facts – which Defendant argues "should change [the] calculus [of the Court's decision regarding Defendant's original counterclaims]," has already been found to be without merit.  (ECF No. 164, at 5; ECF No. 169)  That is, "new" evidence – specifically, that Seeker Music refused to buy the catalogue due to its perception of risk – was, in fact, advanced in the motion for reconsideration and found not to warrant any change to the Court's decision that the original counterclaims should be dismissed on summary judgment.  (ECF No. 169)  All of the new proposed counterclaims, like the counterclaims that were dismissed on summary judgment, are premised on Plaintiffs' alleged failure or refusal to clear a nine-note progression in "Drag Rap" that supposedly copied or violated the rights to a song from the television show "Dragnet."  Importantly, Defendant has known for years, and as early as December 22, 2020, that Plaintiffs did not believe they needed to and would not clear the nine note progression in "Drag Rap."  Defendant, therefore, could have sought leave to amend its counterclaims well in advance of the close of fact discovery, and certainly before

7

summary judgment was entered.  *See State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (recognizing that where a party had an earlier opportunity to amend but delayed until after judgment, the court may exercise its discretion with particular stringency).  Moreover, Defendant had a full and fair opportunity to obtain discovery on its assertion that there is a third party who has rights to the nine note sequence and intends to or is able to assert them, yet failed to produce evidence to support this assertion in opposition to summary judgment.  Thus, because the sixth, seventh, and eighth proposed counterclaims appear to be nothing more than Defendant attempting to reopen discovery and relitigate issues addressed on summary judgment which it could have raised much sooner, good cause for delay has not been shown.  *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990) (citations omitted).

### B.  Prejudice

Delay alone, as noted above, is not grounds for denying amendment.  *See Brecher v. Citigroup Inc.*, No. 09 Civ. 7359 (SHS), 2011 WL 5525353, at *2 (S.D.N.Y. Nov. 14, 2011).  To justify denial of the amendment, the non-moving party also must prove the delay is unduly prejudicial.  *See State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).  "Prejudice to the opposing party ... has been described as the most important reason for denying a motion to amend."  *Frenkel v. New York City Off–Track Betting Corp.,* 611 F. Supp.2d 391, 394 (S.D.N.Y. 2009) (internal quotation marks omitted).  "A litigant may be 'prejudiced' within the meaning of the rule if the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a

timely action in another jurisdiction." *Pasternack v. Shrader*, 863 F.3d 162, 164 (2d Cir. 2017) (quotation omitted).   Whether a party had prior notice of a claim and whether the new claim arises from the same transaction as the claims in the original pleading are central to this determination.  *See Monahan v. New York City Department of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000).  Even an "inordinate delay," for which "no satisfactory explanation is offered," requires a finding of prejudice for a court to use its discretion to deny leave to amend. *Cresswell*, 922 F.2d at 72.   Although the need to expend additional time, resources, or effort does not constitute undue prejudice, *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000), a district court should consider whether allowing the amendment would require the nonmoving party to expend significant additional resources or significantly delay the resolution of the dispute.  *See Block v. First Blood Assoc*., 988 F.2d 344, 350 (2d Cir. 1993).

In this case, the delay resulting from amendment would significantly forestall the resolution of this case.  Plaintiffs would be required to spend a substantial amount of time and resources to brief and file a motion to dismiss the new counterclaims, engage in further discovery, and participate in another round of summary judgment briefing.  Importantly, any resulting prejudice to Plaintiffs is magnified by the procedural posture of this case.  *See, e.g., Lee v. Delta Air Lines, Inc.*, No. 24-850-Civ., 2025 WL 1375326, at *2 (2d Cir. May 13, 2025) (citing *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985)) (noting that prejudice is heightened once discovery is complete and summary judgment motions have been filed).  As noted above, the parties already had an opportunity to conduct discovery on whether any third parties have rights to the nine-note sequence in Drag Rap or to implead such third

9

parties, and the Court has already determined that Defendant failed to produce any evidence showing that Plaintiffs violated third party rights in the sequence.

Unlike cases where motions to amend were granted because undue prejudice is not shown, here, the case is not at an early stage, the motion to amend was filed after other counterclaims were found to be without merit and the proposed amended counterclaims are based on the same underlying factual predicate as the now dismissed original counterclaims. *Cf. Aguilar,* 2025 WL 3523133, at *5 (prejudice not shown because case remained at an early stage, discovery in the action had not yet began, the moving party sought leave to amend in a timely fashion, and the non-moving parties did not claim they would suffer undue prejudice from the filing of amended claims).  *A.V.E. L.A., Inc. v. Estate of Monroe*, 34 F. Supp. 3d 311, 318 (S.D.N.Y. 2014) (finding no undue prejudice because discovery had not yet closed when the motion was filed and the same claims, based on the same course of conduct, were interposed against entirely new *entities*); *JPMorgan Chase Bank, N.A. v. IDW Group, LLC,* No. 08 Civ. 9116 (PGG), 2009 WL 1357946, at *5 (S.D.N.Y. May 12, 2009) (finding no undue prejudice where there were no pending or already resolved dispositive motions in the action); *but see Travelers Indemnity Co. of Connecticut v. Losco Group, Inc.*, 150 F. Supp. 2d 556, 561 (S.D.N.Y. 2001) (denying motion to amend counterclaims because the counterclaim was filed over a year after the complaint was filed, the amendment deadline had expired, and the motion to amend came ten days before the close of discovery).  It would clearly be prejudicial to revive this case now by allowing the proposed counterclaims.

Therefore, I respectfully recommend that leave to file Defendant's sixth, seventh, and eight proposed counterclaims be DENIED on the basis of undue delay and prejudice to Plaintiffs.

10

Because the proposed new counterclaims are also futile, there is no need to, and thus I do not, address Plaintiffs' argument that the proposed amendments are advanced in bad faith.

## C.  Futility

Futility is evaluated under the same standard as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Panther Partners Inc. v. Ikanos Commc'ns., Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).  Thus, in reviewing the proposed amended counterclaims, the Court must determine whether they contain sufficient facts, which if taken as true, state claims for relief that are plausible on their face.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In general, while detailed factual allegations are not required, the pleading must contain more than mere "labels and conclusions." *Id.*; *see also Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717-18 (2d Cir. 2013).  However, "when a motion to amend is made at the close of discovery and in the context of parallel summary-judgment motions, the court's futility assessment may sweep more broadly than the typical 12(b)(6) analysis.  In that circumstance, the court may look to the evidence of record in assessing whether a proposed new claim is potentially viable."  *Metrokane, Inc. v. Built NY, Inc.,* 07 Civ. 2084 (LAK) (MHD), 2008 WL 11395575, at *3 (S.D.N.Y. Sept. 3, 2008) (collecting cases).

I address each proposed counterclaim in turn.

### 1.  Fifth Proposed Counterclaim: Breach of Contract

Defendant's fifth proposed counterclaim seeks the enforcement of an alleged oral settlement agreement wherein Plaintiffs purportedly agreed to sell their copyrights to a third

party.  (ECF No. 156-2, at ¶¶ 83-90)  Defendant alleges that the oral agreement provided, in relevant part, that Defendant would approach UMG about acquiring both parties' rights in The Showboys' catalog and if UMG offered to purchase the catalog for an amount acceptable to the parties, the parties would settle this case, execute mutual releases, and split the UMG purchase price evenly, except that Protoons would also pay all past due royalties to Plaintiffs.  (ECF No. 156-2, at ¶ 71)  Plaintiffs claim that no such settlement was reached, and even if such a meeting of the minds took place, Defendant's pleading fails under 12(b)(6) because it does not allege that the agreement complied with the statute of frauds requirement of 17 U.S.C. §204(a).

Beginning first with the issue of whether the settlement agreement existed, Defendant contends that it was entered into on February 21, 2025.  (*Id.*)  However after review of the docket, which the Court is entitled to do considering the procedural posture of this case, on May 12, 2025, Defendant filed letter a letter with the Court stating "settlement efforts are continuing to move forward."  (ECF No. 146)  This alone undermines the plausibility of Defendant's claim that a settlement had been definitively reached, as the letter post-dates the alleged formation date of the supposed settlement agreement.   That is, if there were merely settlement "efforts," a fortiori, no settlement had been reached.

The proposed counterclaim also fails as pleaded because the performance Defendant seeks to compel is inextricably tied to the transfer of copyright ownership interests to UMG (the supposed purchaser of the rights to the music catalogue), which is, in turn, subject to the Copyright Act's writing requirement.  The Copyright Act states that a "transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights

conveyed or such owner's duly authorized agent." 17 U.S.C. 204(a).  Any agreement to transfer

Plaintiffs' ownership interest to UMG would necessarily implicate Plaintiffs' copyright

ownership (and any third party's copyright ownership).  Defendant does not allege any writing

executed by Plaintiffs reflected an agreement to convey their copyright interests.  Quite the

opposite.  The proposed counterclaim indicates that Plaintiffs disputed the terms set forth in

the proposed term sheet and did not sign it.  Defendant's attempt to characterize a February 21

discussion as an "oral agreement to enter into negotiations" to sell the music catalogue does

not salvage its breach of contract claim.  The substance of the alleged arrangement

contemplates UMG's acquisition of the parties' rights in a music catalog and the allocation of

the resulting purchase price.  Accordingly, Defendant has not plausibly alleged a valid

agreement to sell music rights capable of enforcement.  *See Mellencamp v. Riva Music Ltd.,* 698

F. Supp. 1154 (S.D.N.Y. 1988) (oral agreement to return rights to musical compositions in

exchange for a sum of money was found not to be enforceable for failure to comply with the

statute of frauds).

Further, even if the alleged settlement agreement does not implicate copyright, the

alleged settlement agreement is conditional and incomplete.  It hinges on future events and a

future meeting of the minds – namely, whether a third-party offer would be "acceptable" to

both sides – without alleging any objective standard by which acceptability would be

determined.  Such allegations describe, at most, an agreement to negotiate toward a

conditional settlement upon the occurrence of contingent future circumstances, not a definite

and presently enforceable contract.  *See Brown v. Cara,* 420 F.3d 148, 153 (2d Cir. 2005)

13

(finding that "where the parties contemplate further negotiations and the execution of a formal instrument," a preliminary agreement ordinarily "does not create a binding contract.").

Defendant alleges that, after the February 21 meeting, it negotiated with UMG and then sent Plaintiffs a term sheet reflecting the "negotiated deal terms," which Plaintiffs later rejected.   That sequence of events – continued negotiations culminating in the transmission of a term sheet that Plaintiffs did not accept – further undermines any plausible inference that the parties had already reached a final agreement on all material terms at the February 21 meeting. To the contrary, the allegations support the inference that the parties anticipated further documentation and assent once concrete deal terms were presented.  That is, there was no objective manifestation of an intent to be bound by the terms of the preliminary agreement or the written proposition that followed.  *See Stonehill Capital Mgmt., LLC v. Bank of the W.,* 28 N.Y.3d 439, 448-49 (2016).

Accordingly, Defendant's fifth proposed counterclaim fails to state a claim for breach of contract and leave to amend should be denied as to this proposed counterclaim on futility grounds.

2.   Sixth Proposed Counterclaim: Conversion

Defendant's sixth proposed counterclaim is a conversion claim arising out of losses allegedly suffered by Defendant stemming from Plaintiffs' refusal to clear "Drag Rap" based on facts that allegedly arose after the Court's summary judgment decision.  Plaintiffs' argue that this proposed counterclaim is futile for two reasons: (1) because it is premised on the use of intangible property and (2) Defendant fails to allege that Plaintiffs have exercised "unauthorized dominion" over Defendant's ownership interests simply by preventing

14

Defendant from "disposing of [its] ownership rights." (ECF No. 156-2, at ¶ 95)  The second argument is more persuasive than the first, so I address these argument in reverse.

Under New York law, conversion is "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) (citing *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995)) (internal quotation marks omitted).   To state a claim of conversion, a plaintiff must allege: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (internal quotation marks omitted).  Conversion is also "concerned with possession, not with title." *Pierpoint v. Hoyt*, 260 N.Y. 26, 29 (1932).  Thus, "a defendant who, though having custody of goods, does not exclude the owner from the exercise of his rights is not liable for conversion."  *State of New York v. Seventh Regiment Fund, Inc.*, 98 N.Y.2d 249, 259 (2002).  Conversion requires a defendant's interference "in derogation of plaintiff's rights."  *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 174 (S.D.N.Y. 2012).

Here, Defendant's proposed counterclaim itself concedes that Plaintiffs are co-owners of the musical compositions, and simultaneously alleges that because of Plaintiffs' failure to clear, it is "unable to dispose of his ownership rights."  (ECF No. 156-2, at ¶ 95)  Those allegations do not describe exclusionary dominion over Defendant's property; they describe, at most, an impasse among joint owners about disposition.  Conversion protects possessory control against wrongful usurpation, not a co-owner's preferred method of monetization.

15

Where, as pleaded, Defendant has maintained its ownership rights, there is no plausible inference that Plaintiffs have assumed control over Defendant's interest without authority or in a manner that interferes with Defendant's right of possession.  *See Moses*, 360 F. Supp. 2d at 541.  Nor does a co-owner's refusal to consent to another co-owner's sale constitute conversion.  New York recognizes that co-owners generally share an equal right of possession; liability arises only when one co-owner's conduct amounts to a "hostile appropriation" that "exclude[s], destroy[s], or ignore[s] the interest of the other."  *Gates v. Bowers*, 169 N.Y. 14, 17 (1901)  A mere refusal to participate in a sale is the opposite of hostile appropriation: it neither repudiates the other's title nor deprives the other co-owner of his undivided ownership interest.  Plaintiffs have not taken Defendant's share, denied Defendant's co-ownership, or exercised exclusive control over the works.  Defendant complains only of an inability to dispose of its interest.  That is not conversion.  Thus, the proposed conversion counterclaim fails as a matter of law on this basis.

Additionally, it appears that New York does not recognize a conversion claim under the circumstances pleaded.  Conversion claims traditionally require a specific, identifiable tangible item, but New York law recognizes that intangible property may, in limited circumstances, support a conversion claim.   In reliance on the "merger" doctrine, under which an intangible interest becomes actionable in conversion when it is embodied in – or "merged" with – a tangible object, courts have permitted conversion claims involving stock shares (merged with stock certificates) and musical performances (merged with master recordings*). See Agar v. Orda*, 264 N.Y. 248, 251 (1934); *Sporn v. MCA Records*, 58 N.Y.2d 482, 489 (1983).  And the New York Court of Appeals has held that conversion claims can in some cases extend

16

to intangible assets in the circumstances where "electronic records that were stored on a computer and were indistinguishable from printed documents." *Thyroff v. Nationwide Mut. Ins.*, 864 N.E.2d 1272, 1278 (N.Y. 2007). But, Thyroff was narrowly decided, with the court stating that its holding applied only to the "type of intangible property at issue in [that] case," and did "not consider whether any of the myriad other forms of virtual information should be protected by the tort." *Id.* At least one court in this District analyzing *Thyroff* held that it does not support the proposition that New York recognizes trademark conversion claims. *See Kenyatta v. Combs,* No. 24 Civ. 6923 (JGK), 2025 WL 2636610, at *8-9 (S.D.N.Y. Sept. 15, 2025) (Slip Copy), *but see Grgurev v. Licul*, 229 F. Supp. 3d 267, 286 (S.D.N.Y. 2017)(holding that "an action for conversion involving intangible property may be sustained when, in reality, it involves the misappropriation of tangible property that manifests intangible intellectual property, such as a master recording embodying a musical performance.").

3. Seventh Proposed Counterclaim: Tortious Interference with Prospective Economic Advantage

"Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Kirch v. Liberty Media Corp*, 449 F.3d 388, 400 (2d Cir. 2006) (quotation marks omitted). "[A]s a general rule, a defendant's conduct must amount to a crime or an independent tort in order to amount to tortious interference with a prospective economic advantage." *Friedman v. Coldwater Creek, Inc.*, 321 F. App'x 58, 60 (2d Cir. 2009) (summary order) (quotation marks omitted). "A defendant who has

17

not committed a crime or independent tort or acted solely out of malice may nevertheless be liable if he has employed 'wrongful means,'" which includes "fraud or "misrepresentation." *Id*. (quotation marks omitted).

Here, Defendant fails to state a plausible claim because it fails to identify a business relationship with a third-party that Plaintiffs interfered with, how Plaintiffs interfered with the relationship assuming it existed, or that Plaintiff acted out of "malice" or used "dishonest, unfair, or improper means."

Beginning with the first prong of its tortious interference claim, Defendant alleges that it "had a reasonable expectation of economic advantage arising from its disposition of its rights in the Showboys catalog," (ECF No. 156, at ¶103)  However, a general expectation of future business, without more, does not constitute an actionable business relationship with a third party.  *See Shih v. Broadway League,* No. 23 Civ. 8035 (JPC) (RWL), 2024 WL 3928618, at *13 (S.D.N.Y. Aug. 20, 2024), *report and recommendation adopted,* No. 23 Civ. 8035 (JPC) (RWL), 2024 WL 4069992 (S.D.N.Y. Sept. 5, 2024) (dismissing a claim for failing to allege a business relationship with a third party);  *Stardust Monte-Carlo, S.A.R.L. v. Diamond Quasar Jewelry, Inc.*, No. 16 Civ. 9918 (ER), 2018 WL 1027754, at *5 (S.D.N.Y. Feb. 20, 2018) (stating that "courts in this District are clear that where a party cannot identify specific third party relationships that were disrupted, a tortious interference claim cannot lie"); *Shah v. Lumiere*, No. 13 Civ. 2975 (LGS), 2013 WL 6283585, at *2 (S.D.N.Y. Dec. 3, 2013) ("Plaintiff has not alleged interference with a specific business relationship, which is necessary to plead sufficient allegations under the first two elements of a claim for tortious interference with prospective business relationships"); *Kid Car NY, LLC v. Kidmoto Techs. LLC*, 518 F. Supp. 3d 740, 762 (S.D.N.Y. 2021) ("To the extent

18

the Counterclaim fails to identify a specific business relationship, its claim for tortious interference with prospective business advantage cannot survive a motion to dismiss.").  Mere allegations of failing to clear or abide by the terms of an alleged settlement agreement are not sufficient to identify a third-party business relationship that was interfered with.

Construing Defendant's complaint and brief liberally, the Court may infer that the third-party relationship Defendant intended to identify is Defendant's relationship with either UMG and/or Seeker Music.  But even assuming that Defendant properly identified its relationship with either or both of the two aforementioned third-parties, New York law requires that "a defendant must have engaged in 'conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship.'" *MMS Trading Co. Pty Ltd. v. Hutton Toys, LLC*, No. 20 Civ. 1360 (MKB), 2021 WL 1193947, at *14 (E.D.N.Y. Mar. 29, 2021) (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (N.Y. 2004)).   Defendant alleges no such conduct.  The only allegations asserted here are the same ones that Defendant has asserted for the duration of this case – that Plaintiffs have "fail[ed] and refus[ed] to address and rectify the presence of uncleared samples or interpolations in 'Drag Rap.'" (ECF No. 156-2, at ¶ 101)  This conduct can hardly be said to be directed at UMG or Seeker Music.  Indeed, this alleged conduct began long before the prospective relationships are alleged to have existed, *i.e.* February 2025.

Finally, though Defendant alleges that Plaintiffs "intentionally and maliciously interfered" with Defendant's prospective relationships, it pleads no facts supporting these conclusory allegations.  (ECF No. 156-2, at ¶ 106)  That is, Defendant points to no independent tortious conduct (save for those already discussed) or crime committed that would satisfy this

prong.  Because these allegations are devoid of supporting facts they fall far short of the

pleading requirements.  *See Just Play, LLC v. A.S. Plastic Toys Co.,* No. 19 Civ. 9399, 2022 WL

580876, at *4 (S.D.N.Y. Feb. 25, 2022) (dismissing tortious interference claim when plaintiff

failed to provide supporting facts indicating that the defendant acted for a "wrongful purpose"

or employed "improper means.").

Because Defendant's allegations of tortious interference with prospective economic

advantage amount to "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555),

Defendant should not be permitted to amend its pleadings to include this proposed

counterclaim.

4.   Eighth Proposed Counterclaim: Constructive Trust

To establish a constructive trust, the movant must establish "(1) a confidential or

fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that

promise; and (4) unjust enrichment." *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 352

(2d Cir. 1992) (citations omitted).  "New York law is clear that a constructive trust is an

equitable *remedy*." *In re First Cent. Fin. Corp.,* 377 F.3d 209, 216 (2d Cir. 2004) (emphasis

added). Courts in this District have repeatedly held that a constructive trust is an equitable

remedy, not an independent substantive claim.  Accordingly, it cannot serve as the foundation

for a freestanding cause of action, but instead may be imposed only as relief tied to an

underlying, cognizable claim.  *See e.g.,  I.B. Trading v. Tripoint Global Equities, LLC*, 280 F.

Supp.3d 524, 545 (S.D.N.Y. 2017);  *Islip U–Slip LLC v. Gander Mountain Co.*, 2 F. Supp. 3d 296,

307 (N.D.N.Y. 2014) ("[A] constructive trust is a remedy imposed 'when property has been

20

acquired under such circumstances that the holder of legal title may not in good conscience retain the beneficial interest therein.'") (quoting *Sec. Pac. Mortgage and Real Estate Serv., Inc. v. Rep. of Phil.*, 962 F.2d 204, 210 (2d Cir. 1992)).   Where, as here, no such claim exists, and where the remedy sought is monetary damages, the remedy cannot be awarded.  Leave to add this counterclaim should likewise be denied on futility grounds.

### CONCLUSION

For the foregoing reasons, I respectfully recommend that the Court DENY Defendant's motion for leave to amend its counterclaims.

Dated: March 2, 2026
New York, NY

Respectfully submitted,

Katharine H. Parker
United States Magistrate Judge

**NOTICE**

Plaintiffs and Defendant shall have fourteen days from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).  A party may respond to another party's objections after being served with a copy. Fed. R. Civ. P.72(b)(2).

Plaintiffs shall have fourteen days to serve and file any response.  Defendant shall have fourteen days to serve and file any response.  Any objections and any responses to such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Analisa Torres at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and served on the other parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Torres.  The failure to file timely objections shall result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).